UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NICOLE MAKI, representative of the
Estate of Vincent P. Maki,

      Plaintiff,

v.                                          Case No. 2:12-cv-291
                                            HON. R. ALLAN EDGAR

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____/

**OPINION**

Plaintiff Vincent P. Maki filed this action for judicial review of the final decision of the Commissioner of Social Security denying his request for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 423 and 1383(c)(a)(3)(c). Plaintiff first made his request for disability insurance benefits and supplemental security income in April of 2009. According to plaintiff, in June of 2008 he became disabled due to problems with his back, Raynaud's Disease, back pain, arthritis, high blood pressure, and an injury to his shoulder. See Transcript of Administrative Proceedings at page 155 (hereinafter Tr. at ____). Following the denial of plaintiff's request for benefits, plaintiff sought a hearing before an Administrative Law Judge (ALJ), which was held on November 10, 2010. The ALJ issued a decision on December 10, 2010, finding plaintiff not disabled and denying his request for benefits. Thereafter, plaintiff sought review by the Appeals Council, which was denied on June 15, 2012.

This Court's review of a denial of disability benefits by the Commissioner is extremely limited. The Court must determine whether the appropriate legal standard was applied

and whether there is substantial evidence to support the denial. *See Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1980). Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court is not permitted to review the record de novo and must uphold the decision of the Commissioner as long as it is supported by substantial evidence. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

In denying a request for benefits, the Commissioner is required to follow a sequential evaluation. First, the Commissioner must determine whether or not the plaintiff is engaged in substantial gainful activity. If so, the request for benefits is denied. If the plaintiff is not engaged in substantial gainful activity, the Commissioner must then determine whether or not the plaintiff has a severe impairment. In the instant case, the Commissioner found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and status post right shoulder arthroscopic surgery. Tr. at 40. The Commissioner went on to find that plaintiff was capable of performing light work and was thus not disabled and therefore not entitled to disability benefits.

Both parties recognize that plaintiff suffered from a significant back problem. Dr. Humphrey, one of plaintiff's primary treating physicians, concluded that plaintiff was not capable of performing sedentary work. Tr. at 44, 273, 290-93. The ALJ, relying on the consultive physical examination performed by Dr. Tama Abel, Tr. at 255-59, concluded that Dr. Humphrey's conclusions were not supported by the medical record. The ALJ also rejected the diagnoses of all three of plaintiff's treating physicians that plaintiff suffered from Raynaud's Disease. The parties disagree on whether or not there is substantial evidence in the record to support the ALJ's findings

that plaintiff did not suffer from Raynaud's Disease. The ALJ found that "there are no medical test results or laboratory findings showing that he suffers from arthritis or the claimed Raynaud's Disease." Tr. at 43. Three of plaintiff's treating physicians diagnosed plaintiff with suffering from Raynaud's Disease. Dr. Pearson, Dr. Gagnon and Dr. Humphrey all indicated that plaintiff suffered from Raynaud's Disease. The Commissioner's brief refers to Merrick's Manual of Diagnosis and Therapy to support the ALJ's findings that there were no appropriate diagnostic tests establishing that plaintiff suffered from Raynaud's Disease. According to the Commissioner, a nail fold capillaroscopy and blood testing should have been performed to determine whether or not plaintiff suffered from Raynaud's Disease. The tests that the Commissioner refers to are utilized not to determine if an individual has Raynaud's Disease, but to "distinguish between primary and secondary Raynaud's." *See* http://www.mayoclinic.com/health/raynauds-disease at page 6, a copy of which is attached. Raynaud's Disease is typically diagnosed by white, cold fingers, which all three treating physicians identified as a condition plaintiff suffered. Accordingly, the undersigned cannot find substantial evidence to support the finding that plaintiff did not suffer from Raynaud's Disease.

The parties also disagree on the severity of plaintiff's back problems and whether or not that rendered him disabled. The ALJ's decision was issued in December of 2010. That decision makes no mention of the report from Bell Medical of November 5, 2009, indicating "we got his MRI back and he does indeed have cauda equina syndrome." Tr. at 323. The follow-up of December 2009 indicates that plaintiff was not a good surgical candidate, but that "he has considerable degeneration in just about all his lumbar disks and also a collapsed disk with some disk bulging and neural foraminal encroachment at several levels." Cauda Equina Syndrome is a severe back problem

which can result in severe back pain. *See* http://www.webmd.com/back-pain/guide/cauda-equina-syndrome-overview, a copy of which is attached. In concluding that plaintiff's condition was not disabling, the ALJ relied upon the fact that "the claimant does not take any medication for his back." At the time the ALJ made this finding, it was an accurate statement. Plaintiff had been prescribed narcotic pain medication, but was not taking it. According to plaintiff, this was because he could not afford the medication. However, shortly after the ALJ issued his decision, it was clear that plaintiff began taking Percoset, a strong narcotic, to deal with his back pain. Tr. at 345-348.

The foregoing establishes that there is not substantial evidence to support the ALJ's finding that plaintiff did not suffer from Raynaud's Disease, that plaintiff was not taking narcotic medications to treat his back pain, and does not address the diagnosis of Cauda Equina Syndrome. The Court concludes that there is not substantial evidence to support the finding of the Commissioner. This is not to say that plaintiff is entitled to disability benefits, but that the matter should be remanded for a more thorough and accurate assessment of the nature and extent of plaintiff's condition. In addition, on remand, the Commissioner should more fully address why minimum weight was given to the treating physicians, including Dr. Humphrey, Dr. Pearson and Dr. Gagnon and why the Commissioner relied almost exclusively on the consulting examination of Dr. Abel. *See White v. Commissioner of Social Security*, 572 F.3rd 272, 285-86 (6th Cir. 2009). The Commissioner must articulate good reasons for not giving the opinions of treating physician controlling weight. On remand, the Commissioner shall consider the diagnosis of Raynaud's Disease, the use of narcotic medications, and Cauda Equina Syndrome in reassessing whether or not plaintiff was capable of performing substantial gainful employment.

Accordingly, the matter is remanded to the Commissioner for further proceedings and for a determination as to whether or not plaintiff is entitled to benefits in light of the foregoing.


Dated:         7/11/2013                  /s/ R. Allan Edgar
                                          R. Allan Edgar
                                          United States District Judge